James R. STEWART, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 21, 1972.

Rehearing Denied May 12, 1972.

William R. Young, Eddyville, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Spec. Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Chief Justice.

Appellant James R. Stewart was convicted and sentenced to serve ten years in the penitentiary for stealing cattle, an offense denounced by KRS 433.250(1), and of being an habitual criminal (KRS 431.-190). He appeals from the judgment entered pursuant to the jury verdict. We affirm.

About 1:30 a. m. on Sunday, February 14, 1971, the sheriff of Trigg County received word that a truck loaded with livestock was proceeding along a road in that county. The description of the truck prompted the sheriff to proceed to the home of Stewart in Trigg County. The sheriff saw a truck in Stewart's front yard which, from a distance, appeared to be loaded. A few hours later the Trigg County sheriff learned that some cattle had illegally been taken from a livestock yard in Christian County. He informed the Christian County sheriff's department of his activities and discovery. A deputy sheriff of Christian County made a plaster-of-paris cast of tire tracks found in the fresh snow at the livestock yard. When he learned of the Trigg County sheriff's findings the deputy and others followed the tire tracks from the livestock yard to the Stewart home. Stewart was apprehended near his residence and questioned. He denied stealing any cattle but admitted ownership of a green pickup truck. Stewart returned to his residence with the officers, showed them where his truck was parked, and took them to it. Six head of cattle were on the truck. Although Stewart denied having stolen the cattle, he offered to take the animals back to the Christian County Stock Yards, which was done. On the way there Stewart told the officers he had purchased the livestock from two men who came to his home in the early hours of February 14 in a truck exactly like his. He related that the cattle were transferred from their truck to his truck.

An indictment was returned on February 19, 1971, and trial was promptly set for March 17. On March 11, Stewart moved for a continuance stating " . . . that additional time is needed for the preparation of his defense and that his defense would be prejudiced without such additional time being granted." The motion was overruled. The trial order shows that at the same time the motion for additional time was filed on March 11 appellant sought discovery under RCr 7.24. He demanded that the court " . . . compel the Commonwealth to produce for defendant's inspection and reproduction, any written statement, confession, tape recording or tangible object that is in possession, custody, and control of the Commonwealth, and which might be used as evidence."

The motion for additional time addressed itself to the sound discretion of the court, which, unless abused, will not be disturbed. Gibson v. Com., Ky., 417 S.W.2d 237 (1967). We detect no abuse of discretion and nothing of record which indicates that additional time was needed for preparation.

The trial order of March 17, 1971, shows that "All parties announced ready for trial." However, the transcript of the proceedings reveals the following:

"MOTION FOR CONTINUANCE BY THE HON. WILLIAM R. YOUNG:

At this time I would like again to renew my motion for continuance based on the fact that I would desire additional time to adequately prepare my defense and based on my motion for production of evidence which I made the last time I was here, I recently received in the mail the report that the State Police Laboratory rendered concerning this tire and I just got it about a day or two ago.

THE HON. J. THOMAS SOYARS:

It was in either Saturday's or Monday's mail.

THE COURT:

Let me ask you this: Other than this tire thing that you are talking about, has the Commonwealth complied with your motion?

THE HON. WILLIAM R. YOUNG:

Yes, sir.

THE COURT:

You have no complaint about this?

THE HON. WILLIAM R. YOUNG:

Not unless they bring something up they haven't shown me."

The present complaint is that "During the trial a tire and plaster of paris cast impression were introduced . . ." as exhibits. Appellant's counsel insists " . . that his ability to cross-examine the Commonwealth witness, Dave Williams, was seriously hampered by not having the opportunity to examine these exhibits and accompanying overlays, especially in light of the technical testimony by this expert witness concerning the thirty points of identification." Witness Williams was a laboratory employee of the Kentucky State Police Department. One of his duties was to compare objects and make identifications. He testified that he had examined the plaster cast and a tire on Stewart's truck; that he had made overlays and photographs of both cast and tire. He explained the identifying characteristics and how the comparisons were made to determine that they matched. Stewart's counsel, with dexterity and skill, cross-examined witness Williams. We are of the opinion that Stewart was not prejudiced because additional time for preparation was not allowed and nothing was introduced of which Stewart's counsel did not have prior information.

A petition for a change of venue was filed. It was supported by two affidavits which stated that there was animosity, bitterness and prejudice in Christian County against Stewart to such an extent that he could not have a fair and impartial trial. The Commonwealth's answer was accompanied by five responsive affidavits, all of which refuted the charges made by Stewart. Upon the merits and relying upon Wade v. Commonwealth, Ky., 334 S.W. 2d 901 (1958), the trial court overruled the motion. It is unnecessary for us to discuss Wade because the conflicting affidavits provided a basis for the trial court, in the exercise of sound discretion, to overrule the motion for the change of venue. Hurley v. Com., Ky., 451 S.W.2d 838 (1970).[1]

Stewart previously had been convicted of a felony—malicious cutting with intent to kill, but he had been restored to his civil rights by executive order. Before the introduction of any evidence, Stewart moved to dismiss the habitual criminal charge on the ground that the Governor had restored him to "all the rights of citizenship." The order of restoration states that it was made pursuant to Sections 145 and 150 of the Kentucky Constitution, of which the former authorized the Governor to restore to a felon the right to vote and the latter to remove his disqualification to hold public office. Stewart was not pardoned under Section 77, but even if he had been, as he claims, that would not have been a basis for dismissal of the habitual criminal charge. See Herndon v. Com., 105 Ky. 197, 48 S.W. 989 (1899), and Green v. Com., Ky., 281 S.W.2d 637 (1955).

Evidence of Stewart's former felony conviction was introduced to sustain the habitual criminal charge. Stewart argues that we should overrule Hardin v. Com., Ky., 428 S.W.2d 224 (1968), and cases of similar import, approving the procedure of trying the habitual criminal charge with the primary offense. A majority of the court is of the opinion that this procedure, which has been approved in Johnson v. Com., Ky., 445 S.W.2d 704 (1969); Shull v. Com., Ky., 475 S.W.2d 469 (decided October 15, 1971); and Murray v. Com., Ky., 474 S.W.2d 359 (decided December 17, 1971), should be continued.

It is also argued that it was error not to sustain a motion to exclude the testimony of deputy sheriff David Norfleet and State Police laboratory technician David Williams insofar as it related to evidence obtained in the interrogation of Stewart, on the claim that the officials failed to advise the accused of his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Trigg County sheriff testified

---

1. Apparently the motion for change of venue was submitted on the affidavits without a request for an evidentiary hearing.

that Stewart ". . . was advised of his rights at the moment he showed us the cattle on the truck." He was not under arrest at that time, although he was confronted by the police officers. The trial court was justified in holding that the warning was sufficient. Hohnke v. Com., Ky., 451 S.W.2d 162 (1970).

 Stewart contends that the testimony of the witness Williams should have been excluded " . . . since it was based on Norfleet's illegally obtained Exhibits '3' and '4', and that all of Norfleet's testimony which followed his original contact with the defendant also should have been excluded." Those exhibits were the tire and the plaster-of-paris cast. During cross-examination counsel for Stewart objected to Norfleet's testimony on the basis that there had been an illegal search and seizure and that the information obtained by Norfleet resulted from that illegal search. According to the evidence, Stewart took the officers to the truck on which the cattle were loaded. There was neither an illegal search nor seizure of the tire. We find no merit in this argument. Shelton v. Com., Ky. (decided November 19, 1971).

Lastly, it is claimed that the court erred in failing to sustain a motion for a directed verdict of not guilty on the habitual criminal charge. Appellant says that the prior conviction of Stewart was not proved as required by KRS 422.040, as the official records were not introduced into evidence. A deputy circuit clerk was asked whether she had custody of the official records, to which she replied that she did, and she was then requested to examine the records which were present in the courtroom and tell the jury what they revealed with respect to the defendant Stewart. She referred to Order Book 26 and told what appeared on page 212—an indictment against him, to which he pleaded guilty; whereupon, he was sentenced to two years in the penitentiary. She said that the book showed that on October 26, 1967, judgment

was entered against Stewart. We have here the production of the official record book, a reading from a portion of it, and an explanation of what appeared. In Jones v. Com., Ky., 401 S.W.2d 68 (1966), we approved the same procedure used here and held that it was unnecessary to physically introduce the order books. The motion for a directed verdict was properly overruled.

The judgment is affirmed.

All concur.